UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-61196-Civ-MOORE
MAGISTRATE JUDGE P.A. WHITE

LEROY SMITH a/k/a         :
TROY SWINT,
                          :
      Petitioner,
                          :
v.                                    REPORT OF
                          :        MAGISTRATE JUDGE
JULIE JONES,
                          :
      Respondent.
                          :
_____

## I. Introduction

Leroy Smith a/k/a Troy Swint, a state prisoner confined at South Bay Correctional Facility at South Bay, Florida has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, attacking his convictions and sentences entered in Case No. 04-13805 in the Circuit Court of the Seventeenth Judicial Circuit of Florida, at Broward County. Smith argues that he received ineffective assistance of trial counsel, because his lawyer failed to investigate the case and call Ebony Boynton as a defense witness at trial, although requested to do so.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of the petition (DE# 1), the Court has the respondent's response to an order to show cause with supporting Appendix of exhibits (DE# 11, 12), and the petitioner's reply (DE# 13).

## II. <u>Facts</u>

The pertinent facts of this case as revealed by the evidence admitted at trial are as follow.[1] The victim, Aiesha Jackson, was approximately one week shy of twelve years of age at the time of the criminal incident and she had been living with her grandmother. Smith was her stepfather. On February 15, 2004, Smith was to pick Jackson up from her grandmother's house and drive her in his automobile directly to her aunt's house to spend the night. The victim's house was a five minute drive from her grandmother's house. Upon being picked up, Jackson sat in the rear passenger seat of the car. Instead of immediately taking Jackson to the intended location, Smith proceeded to drive Jackson to various other locations.

During the drive, Smith stopped the car at an empty home in Hollywood. Smith, without warning, reached over the back seat and punched Jackson in the face. He then jumped in the back of the car. Jackson pulled out a small knife and tried to stab Smith, but the knife fell to the floor of the car. Smith choked Jackson with his forearm, causing Jackson to lose consciousness. Just before losing consciousness, Jackson saw Smith unbuckling his pants. Jackson awoke to find Smith's penis in her vagina and she resumed her struggle. After Smith completed the sexual assault, he reached under the car seat, pulled out a yellow wire and began to strangle the victim with the wire. When he stopped his physical assault on the victim, he drove her to her aunt's house. Before Jackson exited the vehicle, Smith threatened harm to Jackson's family if Jackson

---

[1] The facts have been obtained by review of the evidence admitted at trial, as revealed by the trial transcript. A copy of the transcript can be found at Exhibit 2 to the Respondent's Response. (DE# 12-1, 12-2; Ex. 2). A thorough recitation of the facts of the case with citations to the trial transcript is included in Smith's brief on direct appeal. <u>See</u> Initial Brief of Appellant at 2-6. (DE# 12-2; Ex. 4).

reported the incident to anyone.

After summoning the police, Jackson went to a Sexual Assault Treatment Center and a physical examination was conducted. The examining nurse testified at trial that her examination revealed signs of vaginal and anal penetration in that the victim's vagina was red and irritated, there were superficial cracks or fissures in the skin between the vagina and rectum, and there was relaxed muscle tone in the rectal area. The nurse concluded that the penetration had taken place within a period of twenty-four hours due to the presence of some bleeding and the relaxed muscle tone. There was additional forensic evidence in the form of a condom found at the scene of the incident. Smith's DNA matched the DNA found on the exterior of the condom and DNA testing of the contents of the condom produced a match of both Smith and the victim's DNA.

### III. Procedural History

Smith was charged by Amended Information with the offenses of kidnapping of a child under thirteen years of age (Count I), attempted second degree murder (Count II), sexual battery-familial or custodial authority (Counts III and IV) and child abuse (Count V). See Amended Information. (DE# 11-1; Ex. 1 at CM/ECF pages 21-3). After trial before a jury, Smith was found guilty of battery, a lesser included offense of Count II, and the crimes charged in Counts III, IV and V. See Verdict (DE# 11-2; Ex. 2 at CM/ECF pages 241-44). He was found not guilty of the offense charged in Count I. Id. at CM/ECF page 240. Smith was adjudicated guilty of the subject offenses and he was sentenced as an habitual felony offender to a fifty-year term of imprisonment and a minimum mandatory term of imprisonment of thirty years as a prison releasee reoffender. See Judgment, Sentence. (DE# 11-2; Ex. 2 at CM/ECF pages 261-71).

Smith prosecuted a direct appeal from his convictions, raising the following grounds for relief: (1) the trial court erred in denying his motion for judgment of acquittal as to Count IV as the circumstantial evidence presented was insufficient to prove that he had anal intercourse with the victim; (2) the trial court erred in denying his request to recall the victim and her mother as witnesses to testify regarding a prior rape accusation by the victim against an officer at a boot camp where the victim had then been housed; and (3) the trial court erred when it permitted the victim's mother to testify over the defense's hearsay objection that the victim had been "hollering, screaming and crying saying that [he] just raped [her]." See Initial Brief on Direct Appeal. (DE# 12-2; Ex. 4). The Florida Fourth District Court of Appeal affirmed the convictions in a *per curiam* decision without written opinion. (DE# 12-2; Ex. 5). See also Smith v. State, 34 So.3d 17 (Fla. 4th DCA 2010).

Smith challenged his convictions in a pro se motion for postconviction relief with supporting memorandum of law pursuant to Fla.R.Crim.P. 3.850, subsequently amended, raising *inter alia* the same claim of ineffective assistance of trial counsel raised in the instant federal petition.[2] See Defendant's Amended Motion for Postconviction Relief. (DE# 12-2; Ex. 7). The state filed a response with supporting exhibits. See State's Response to Defendant's Sworn Motion for Post Conviction Relief and Amended Motion for Post Conviction Relief. (DE# 12-2, 12-3; Ex. 9). After setting forth the applicable standard for review of an ineffective assistance of trial counsel claim; Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the state

---

[2]Smith also challenged the representation received from appellate counsel on direct appeal in a pro se state habeas corpus petition and the petition was denied. (DE# 12-2; Ex. 8).

conceded that an evidentiary hearing was needed before the trial court could dispose of the subject ground for relief. Id.

The trial court agreed with the state and ordered that an evidentiary hearing be conducted. See Order Granting in Part and Denying in Part Defendant's Amended Motion for Post-Conviction Relief. (DE# 12-3; Ex. 10). After holding an evidentiary hearing, where Smith was represented by appointed counsel, the trial court entered a written order, finding the ineffective assistance of trial counsel claim meritless and denied collateral relief. See Transcript of hearing conducted on November 25, 2013; Order Denying Defendant's Amended Motion for Post-Conviction Relief. (DE# 12-3; Ex. 11, 12). Smith appealed the trial court's ruling, through appointed counsel. See Initial Brief of Appellant. (DE# 12-3; Ex. 13). The Florida appellate court affirmed the trial court's rulings in a *per curiam* decision without written opinion. (DE# 12-3; Ex. 14, 15). See also Smith v. State, 158 So.3d 600 (Fla. 4th DCA 2015)(table). After Smith's motion for rehearing *en banc* was denied, the mandate issued on March 27, 2015. (DE# 12-3; Ex. 15).

IV. Threshold Issues - Timeliness, Exhaustion and Procedural Bar

Not long after all state court proceedings had concluded, Smith came to this Court, filing the instant pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. The respondent has filed a response to an order to show cause with supporting Appendix of exhibits. See Response to Order to Show Cause. (DE# 11). The respondent correctly concedes that the instant petition has been timely filed pursuant to 28 U.S.C. §2244(d). See Response to Order to Show Cause at 2-3. The respondent also concedes that Smith is entitled to review on the merits of his claim, because the ground has been exhausted before the state courts. See 28 U.S.C. §2254(b)(1) and (b)(1)(A)(A state prisoner's habeas corpus petition

"shall not be granted unless it appears that----the applicant has exhausted the remedies available in the courts of the State....").[3] <u>See also</u> <u>Cone v. Bell</u>, 556 U.S. 449, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009). The respondent argues, however, that Smith is not entitled to habeas relief in that his claim is without merit. <u>See</u> Response to Order to Show Case at 5-14.

## V. <u>Applicable Legal Principles</u>

### A. <u>Standard of Review in §2254 Cases</u>

Because Petitioner filed his federal petition after April 24, 1996, this case is governed by 28 U.S.C. §2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). <u>See</u> <u>Debruce v. Commissioner, Alabama Dept. of Corrections</u>, 758 F.3d 1263, 1265-66 (11th Cir. 2014). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, a federal court may grant habeas relief only when a state court's decision on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" decisions from this Court, or was "based on an

---

[3]An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838 (1999); <u>Richardson v. Procunier</u>, 762 F.2d 429, 430 (5th Cir. 1985); <u>Carter v. Estelle</u>, 677 F.2d 427, 443 (5th Cir. 1982), <u>cert.</u> <u>denied</u>, 460 U.S. 1056 (1983). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." <u>Picard v. Connor</u>, 404 U.S. 270-275-77 (1971). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion. <u>Leonard v. Wainwright</u>, 601 F.2d 807, 808 (5th Cir. 1979). Claims of ineffective assistance of trial counsel are generally not reviewable on direct appeal, but are properly raised in a motion for postconviction relief. <u>See</u> <u>Kelley v. State</u>, 486 So.2d 578, 585 (Fla.), <u>cert.</u> <u>denied</u>, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986). Exhaustion requires that the ineffective claim not only be raised in a Rule 3.850 motion, but the denial of the claim be presented on appeal. <u>See</u> <u>Leonard v. Wainwright</u>, 601 F.2d at 808. It is noted that the Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered before October 1, 1981, and all Fifth Circuit Unit B decisions rendered after October 1, 1981. <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981).

unreasonable determination of the facts." 28 U.S.C. § 2254(d).

The AEDPA imposes a highly deferential standard for reviewing the state court rulings on the merits of constitutional claims raised by a petitioner. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103, 131 S.Ct. 770, 786-87 (2011). See also Greene v. Fisher, 565 U.S. __, ___, 132 S.Ct. 38, 43, 181 L.Ed.2d 336 (2011)(The purpose of AEDPA is "to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.")(internal quotation marks omitted).

A state court's decision is "contrary to" clearly established Supreme Court precedent in either of two respects: (1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1519-20, 146 L.Ed.2d 389 (2000). To determine whether a state court decision is an "unreasonable application" of clearly established federal law, we are mindful that "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410, 120 S.Ct. at 1522. As a result, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the

correctness of the state court's decision." <u>Richter</u>, <u>id</u>. at 786 (quotation marks omitted).

It is noted that the state court is not required to cite, or even have an awareness of, governing Supreme Court precedent, "so long as neither the reasoning nor the result of [its] decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); *cf*. <u>Harrington</u>, 562 U.S. at 98, 131 S.Ct. at 785 (reconfirming that "§2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'" and entitled to deference); <u>Mitchell v. Esparza</u>, 540 U.S. 12, 16 (2003)("[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'")(*quoting* <u>Early v. Packer</u>, 537 U.S. at 7-8).

Thus, state court decisions are afforded a strong presumption of deference even when the state court adjudicates a petitioner's claim summarily—without an accompanying statement of reasons. <u>Harrington</u>, 562 U.S. at 91-99, 131 S.Ct. at 780-84 (concluding that the summary nature of a state court's decision does not lessen the deference that it is due); <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1288 (11th Cir. 2011)(acknowledging the well-settled principle that summary affirmances are presumed adjudicated on the merits and warrant deference, *citing* <u>Harrington</u>, 562 U.S. at 98-99, 131 S.Ct. at 784-85 and <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1254 (11th Cir. 2002)). <u>See also</u> <u>Renico v. Lett</u>, 559 U.S. 766, 773, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)("AEDPA ... imposes a highly deferential standard for evaluating state-court

rulings ... and demands that state-court decisions be given the
benefit of the doubt.")(citations and internal quotation marks
omitted). As recently noted by the Supreme Court, adherence to
these principles serves important interests of federalism and
comity. Woods v. Donald, ___ U.S. ___, 135 S.Ct. 1372, 1376 (2015).
"AEDPA's requirements reflect a 'presumption that state courts know
and follow the law.'" Id., quoting, Woodford v. Visciotti, 537 U.S.
19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002)(per curiam).

    Review under §2254(d)(1) is limited to the record that was
before the state court that adjudicated the claim on the merits.
See Cullen, 131 S.Ct. at 1398-1400 (holding new evidence introduced
in federal habeas court has no bearing on Section 2254(d)(1)
review). And, a state court's factual determination is entitled to
a presumption of correctness. 28 U.S.C. §2254(e)(1). Under 28
U.S.C. §2254(e)(1), this Court must presume the state court's
factual findings to be correct unless the petitioner rebuts that
presumption by clear and convincing evidence. See id. §2254(e)(1).
Although the Supreme Court has "not defined the precise
relationship between § 2254(d)(2) and §2254(e)(1)," Burt v. Titlow,
571 U.S. ___, ___, 134 S.Ct. 10, 15, 187 L.Ed.2d 348 (2013), the
Supreme Court has emphasized "that a state-court factual
determination is not unreasonable merely because the federal habeas
court would have reached a different conclusion in the first
instance." Burt, id. (quoting Wood v. Allen, 558 U.S. 290, 301, 130
S.Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

## B. Ineffective Assistance of Trial Counsel

    Petitioner claims that trial counsel provided constitutionally
ineffective assistance for various enumerated reasons. This Court's
analysis begins with the familiar rule that the Sixth Amendment
affords a criminal defendant the right to "the Assistance of

Counsel for his defence." U.S. CONST. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In *Strickland*, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688; see also Bobby Van Hook, 558 U.S. 4, 8, 130 S.Ct. 13, 175 L.Ed.2d 255 (2009); Cullen v. Pinholster, 563 U.S. 170, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011). "[T]he Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." Bobby Van Hook, 558 U.S. at 9 (internal quotations and citations omitted).

A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Strategic choices made after thorough investigation of the law and facts relevant to

10

plausible options are virtually unchallengeable. Id. at 690-91. To uphold a lawyer's strategy, the Court need not attempt to divine the lawyer's mental processes underlying the strategy. "There are countless ways to provide effective assistance in any given case." Strickland, 466 U.S. at 689. No lawyer can be expected to have considered all of the ways. Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001). If the petitioner cannot meet one of Strickland's prongs, the court does not need to address the other prong. Strickland, 466 U.S. at 697. See also Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000).

Keeping these principles in mind, the Court must determine whether counsel's performance was both deficient and prejudicial under Strickland. As indicated, courts must be highly deferential in reviewing counsel's performance, and must apply the strong presumption that counsel's performance was reasonable. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689. See also Chandler v. United States, 218 F.3d at 1314. "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284, 297 (2010). See also Osborne v. Terry, 466 F.3d 1298, 1305 (11th Cir. 2006)(citing Chandler v. United States, 218 F.3d at 1313). Consequently, "it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." French v. Warden, Wilcox State Prison, 790 F.3d 1259, 1268 (11th Cir. June 23, 2015), quoting, Johnson v. Sec'y Dep't of Corr., 643 F.3d 907, 911 (11th Cir. 2011).

A habeas court's review of a claim under the *Strickland* standard is "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, 134 S.Ct. 10, 13, *quoting* Cullen v. Pinholster, 563 U.S. 170,_____, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011)). See also Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009), *citing*, Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)(per curiam). The relevant question "is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable-a substantially higher threshold." Knowles, 556 U.S. at 123, 129 S.Ct. at 1420. (citations omitted). Finally, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.

## VI. Discussion

Smith claims that he received ineffective assistance of trial counsel, because his lawyer failed to properly investigate the case and call Ebony Boynton, his niece, as a defense witness at trial. Smith asserts that he informed trial counsel about Boynton, he requested counsel to call her as a witness, and Boynton was willing to testify in his defense at trial. More specifically, Smith maintains Boynton would have provided the exculpatory testimony that she was at all times in the same vehicle with him and the victim and that no sexual assault occurred. Boynton would also have provided impeachment evidence in the form of testimony that the victim had made some sort of threat against Smith during the car ride.

The ineffective assistance of trial counsel claim was raised in Smith's pro se Rule 3.850 motion, as amended. As indicated above, the trial court conducted an evidentiary hearing on the claim where Smith was represented by appointed counsel. See Transcript of hearing conducted on November 25, 2013. (DE# 12-3; Ex. 11). Smith called Ebony Boynton as a defense witness and he testified in his own behalf at the hearing. Id. The state called former trial counsel Eric Schwartzrich as a witness. Id. The testimony of the witnesses was accurately and succinctly summarized by the postconviction court as follows:

> The Defendant testified that prior to trial, he had provided his counsel, Eric Schwartzreich [sic], Esq., with the names and phone numbers of [Ebony Boynton]. At trial, Mr. Schwartzreich [sic] announced that he was not going to call certain witnesses, and the Defendant did not protest.
>
> Mr. Schwartzreich [sic] testified that he could not remember which potential witnesses, if any, he might have failed to contact prior to trial; however, he testified that he spoke with the Defendant prior to trial about the witnesses he would be calling, and the Defendant did not raise any objections.
>
> As to Ms. Boynton, the Defendant asserts that her testimony could have diminished the credibility of the victim's testimony as Ms. Boynton possibly heard the victim make some sort of a threat against the Defendant on the day of the incident....
>
>                  *    *    *
>
> Ms. Boynton testified that she had never been contacted by the Defendant's counsel to testify at trial, but would have been available. On the day of the incident, Ms. Boynton, the Defendant, and several other family members were at the victim's grandmother's house for a family gathering. She testified that toward the end of the gathering, there was a verbal altercation between several family members that may have been precipitated by the issue of the victim's curfew due to the victim possibly being on probation. She stated that the victim did not want to leave the family gathering. Nevertheless, some time thereafter, Ms. Boynton and her children; the Defendant's wife and the victim's mother, Melissa Gardner; and the Defendant's stepdaughter, the victim,

were driven home by the Defendant. Ms. Boynton stated that she recalled the victim possibly making some sort of a threat to the Defendant in the vehicle, but could not recall what it was about.

Ms. Boynton testified that Ms. Gardner was the first to be dropped off, and then Ms. Boynton and her children were dropped off. Remaining in the vehicle were the Defendant and the victim. Ms. Boynton testified that because she was not present in the vehicle after being dropped off, she does not know what transpired between the Defendant and the victim afterwards.

The Defendant testified that after he dropped off Ms. Gardner, Ms. Boynton, and Ms. Boynton's children, leaving him alone in the vehicle with the victim, the victim then asked to be dropped off at her boyfriend's house, and he refused to take her "to see a boy." The Defendant alleges that as a result of his refusal, the victim made a threat against him.

(Order Denying Defendant's Amended Motion for Post-Conviction Relief at 2-3)(DE# 12-3; Ex. 11).

After having heard testimony from the witnesses as well as argument from respective counsel, the trial court entered a well-reasoned and thorough written order. Id. at 1-5. The trial court addressed the subject ineffective assistance of trial counsel claim pursuant to the applicable *Strickland* standard and found the claim meritless, having expressly found former trial counsel a credible witness.[4] The trial court's ruling was affirmed on appeal. See Smith v. State, 158 So.3d 600 (Fla. 4th DCA 2015)(table).

Thus, it is clear that in arriving at its decision the postconviction court found Smith's testimony which conflicted with former trial counsel and the prosecutor incredible. Id.

---

[4]Specifically, the trial court stated:

The Court finds Mr. Schwartzreich [sic], a seasoned criminal-defense attorney for many years, to be a credible witness.

(Order Denying Defendant's Amended Motion for Post-Conviction Relief at 5)(DE# 12-3; Ex. 12).

Determinations of credibility are best made by the trial court judge, who can assess the demeanor and candor of the witnesses. <u>Gore v. Secretary for Dept. of Corrections</u>, 492 F.3d 1273, 1300 (11th Cir. 2007)(noting that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review), *citing*, <u>Rice v. Collins</u>, 546 U.S. 333, 341-42 (2006)(stating that "[[r]easonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination).

Thorough review of the record in this case yields no suggestion that the trial court's findings of fact made during the state postconviction proceeding where the subject issue was raised were not supported by the record or were otherwise deficient. Because Smith has not rebutted the trial court's findings of fact by clear and convincing evidence, the findings are presumed correct.[5] <u>See</u> 28 U.S.C. §2254(e)(1).

As stated above, this Court's review of a counsel's performance is highly deferential, and there is a strong presumption that counsel's performance was reasonable and that all

---

[5]Federal courts in habeas corpus proceedings are required to grant a presumption of correctness to state court's explicit and implicit findings of fact, if supported by the record. <u>Green v. Johnson</u>, 160 F.3d 1029, 1045 (5th Cir. 1998), <u>cert</u>. <u>denied</u>, 525 U.S. 1174 (1999). If it is clear that the trial court would have granted the relief sought by the petitioner had it believed the testimony of certain witnesses, "its failure to grant relief was tantamount to an express finding against the credibility of [those witnesses]." <u>Marshall v. Lonberger</u>, 459 U.S. 422, 433 (1983), <u>citing</u>, <u>LaVallee v. Delle Rose</u>, 410 U.S. 690 (1973). The presumption of correctness afforded factual findings of state courts applies equally to factual determinations made by state trial and appellate courts. <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981). Although the Court in <u>Sumner</u> was interpreting Section 2254 as it existed pre-AEDPA, the holding hinged on the fact that no distinction was made between state trial and appellate courts in the pre-AEDPA version of section 2254, a fact which continues to be true of the current version of the statute. <u>See</u> <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003).

significant decisions were made in the exercise of reasonable professional judgment. <u>Chandler v. United States</u>, 218 F.3d 1305, 1314 (11th Cir. 2000). Effective assistance of counsel embraces adequate pretrial investigation. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 691 (1984)(stating that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." <u>See also</u> <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1262-63 (11th Cir. 1992) and cases cited therein. Accordingly, "[w]hen a lawyer fails to conduct a substantial investigation into any of his client's plausible lines of defense, the lawyer has failed to render effective assistance of counsel." <u>Id</u>. at 1263, <u>quoting</u>, <u>House v. Balkcom</u>, 725 F.2d 608, 615, 617-18 (11th Cir.), <u>cert</u>. <u>denied</u>, 469 U.S. 870 (1984). It is evident from full and careful review of the record that trial counsel did properly investigate the facts of the case and had investigated all possible defenses, contrary to Smith's assertion.

Further, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." <u>Evans v. Sec'y, Fla. Dep't of Corr.</u>, 699 F.3d 1249, 1268 (11th Cir. 2012). "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1514 (11th Cir. 1995)(quotation omitted).

Trial counsel testified at the postconviction evidentiary hearing that he interviewed the several potential defense witnesses Smith provided. <u>See</u> Transcript of hearing conducted on November 25, 2013, at 37-8. (DE# 12-3; Ex. 11). He did so because Smith had informed him that the prospective witnesses could offer testimony that he had not caused the injuries to the victim in that the

16

victim was sexually active and the injuries she received were at the hands of her boyfriend. Id. Trial counsel remembered discussing the issue regarding whether to call defense witnesses and the decision was made before trial that no defense witnesses would be called. Id. Trial counsel testified that at the start of the trial, he informed the trial court that the issue of defense witnesses was raised with Smith and no defense witnesses were to be called. Id. at 38-9.

Review of the trial transcript confirms trial counsel's recollection. Immediately before opening statement, trial counsel told the court:

> Judge, a couple of other issues I want to put on the record. Mr. Smith - - And the Court gave me some continuances when I got appointed. I took some depositions. He had some witnesses that he wanted me to contact. He gave me a list of those witnesses. I contacted them. I spoke with them. I'm not calling them. I didn't list them.

(Trial Transcript at 185-86)(DE# 12-1; Ex. 2). Smith did not contradict counsel's statements, remaining silent. Id. The transcript of trial also shows that after the state had rested and after Smith had consulted with counsel off the record, Smith unequivocally told the court that he elected not to testify in his own defense. Id. at 446-47. When the defense rested, Smith never told the trial court that there were witnesses he had wanted trial counsel to call in his defense. Id. at 447.

Before resting before the jury, trial counsel attempted to recall as witnesses the victim's mother and/or the victim to offer testimony regarding an alleged accusation of sexual assault made by the victim against a boot camp officer when the victim had been confined at the boot camp. Id. at 447-49. The trial court denied the request and trial counsel next rested before the jury without

17

calling any defense witnesses. Id. at 449-50.

There are any number of legitimate strategic reasons trial counsel may have elected not to call the identified prospective witness, Ebony Boynton, and there is nothing in the existing record that suggests counsel's failure to do so was the result of deficient performance. For example, there were potential credibility issues with Boynton since she was Smith's niece. Further, Boynton's anticipated testimony was not exculpatory, for the reasons set forth below. Additionally, as the trial transcript appears to indicate, Smith agreed with trial counsel's strategy not to call Boynton as a defense witness. Even if Smith had merely acquiesced to defense's counsel's trial strategy not to call Ebony Boynton as a defense witness at trial, it cannot be said that such acquiescence was anything but voluntary here. See generally Lambrix v. Singletary, 72 F.3d 1500, 1508 (11th Cir. 1996)("Without evidence that [the defendant] was subject to continued coercion, we cannot assume that [the defendant's] apparent acquiescence to a trial strategy in which he did not testify was anything but voluntary."), aff'd, 520 U.S. 518 (1997). If Smith had truly wanted to call his niece as a witness, he was provided with more than one opportunity to so inform the court, and he failed to do so. Smith did not complain about the defense presented or the representation received from counsel until state postconviction proceedings. Counsel did not fall below the *Strickland* standard by employing a legitimate trial strategy.

Even if trial counsel's performance were to be seen as deficient in any respect, Smith still cannot satisfy the prejudice prong of *Strickland*. Prospective witness Boynton did testify at the evidentiary hearing that she was present when the victim and her mother were arguing over the victim leaving her mother's house. See

Transcript of hearing conducted on November 25, 2013, at 9-10. (DE# 12-3; Ex. 11). The victim did not want to leave at that time and the victim's mother stated that if she did not go home, she (the victim's mother) would call the victim's probation officer. Id. Boynton testified that she heard the victim respond, "If you're going to call the probation officer, I'm going to contact the police on Leroy." Id. at 10. After that remark, Boynton, the victim, the victim's mother, and Boynton's children immediately entered Smith's car. Id. The victim was seated in the back of the car. Id. During the drive, Boynton heard the victim level the same threat as made before entering the car. Id. at 11. Boynton testified that eventually all passengers were taken to their respective locations, leaving Smith and the victim alone in the car. Id. at 11-2. Boynton admitted at the hearing that she had no knowledge of what occurred after she exited the car and Smith and the victim drove off. Id. at 14.

As determined by the state courts, Smith has not shown that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Even if the prospective witness had testified at trial as she had at the evidentiary hearing that she heard some threats made by the victim against Smith, any such threats were vague and non-specific. More important, the prospective witness was taken to her location, leaving Smith and the victim alone in the car. Boynton had no personal knowledge whatever of what occurred after she had exited the car when Smith and the victim had been alone together. Smith's allegation in this federal proceeding that Boynton was with him and the victim all times in the car is clearly belied by the record.

Moreover, the failure to call an exculpatory witness is more

likely to be prejudicial when the conviction is based on little evidence of guilt. <u>Fortenberry v. Haley</u>, 297 F.3d 1213, 1228-29 (11th Cir. 2002). The evidence against Smith was overwhelming. The victim was eleven years old at the time of the attack, and the victim certainly knew her attacker since he was her stepfather. The victim testified that Smith was like a father to her. <u>See</u> Trial Transcript at 203-04. At the time of trial, the victim was seventeen years of age and she testified in a calm, clear and certain manner as to the subject criminal incident as described above in the facts section of this Report. <u>Id</u>. at 204-15, 220-26. The victim's mother testified that her daughter telephoned her the evening of the attack and she was crying and screaming when she stated that Smith had raped her. <u>Id</u>. at 279-81. Shortly thereafter, the victim's mother went to her daughter and she found her daughter lying on the floor, screaming and crying. <u>Id</u>. at 282. The police were called and the victim was taken to a sexual assault treatment center where she was physically examined by a trained medical professional. <u>Id</u>. at 339-48.  The examination showed a faint mark on the victim's neck, fresh cracks and tears in the skin area between the victim's vagina and rectum, fresh bleeding, and physical signs of anal penetration. <u>Id</u>. at 340-43. There was also forensic evidence in the form of Smith's DNA found on the outside of a condom that had been discovered at the scene of the sexual assault and a mixture of Smith and the victim's DNA found from the substance contained inside the condom. <u>Id</u>. at 380-82, 393-410.

The defense at trial was presented by way of thorough and strenuous cross-examination of the state witnesses and forceful, meticulous closing argument.[6] <u>See e.g.</u>, Trial Transcript at 235-70,

---

[6]The following remarks made by trial counsel during closing argument are illustrative of the defense presented at trial:

501-21. The defense focused on challenging the credibility of the then-eleven-year-old victim. Trial counsel pointed out that the victim was not a typical eleven-year-old in that she had problems in school, was serving a term of probation, had a boyfriend, had engaged in sexual intercourse on at least two occasions with her boyfriend, and had not informed her mother of the fact that she had engaged in sexual relations. Trial counsel additionally pointed out to the jury the lack of physical evidence in the case, such as, no signs of bruising on the victim's face to support a punch to the face, no severe scarring on the victim's neck to support a strangulation with a metal wire, no presence of Smith's DNA on the victim's body, and no finding by the police of the victim's capri pants which the victim was to have removed and placed in Smith's trunk at Smith's behest because of stains on the pants.

Although the now-identified witness may have cast some doubt upon the other evidence introduced at trial, this is insufficient to show that the jury would have believed the alleged retaliation testimony over the other credible evidence of record. See also Body v. United States, 568 F.App'x 760, 762-63 (11th Cir.), cert. denied, ____ U.S. ____, 135 S.Ct. 501, 190 L. Ed. 2d 377 (2014), citing, United States v. Hunt, 526 F.3d 739, 745 (11th Cir. 2008)(noting that generally, juries can choose from several

---

And make no mistake about it, Ieashia Jackson, it's a very sad life. Her mother -- I mean, you have your own interpretations and impressions of those witnesses. They were all different individuals. But I mean it appeared this is a very sad girl, but a very troubled girl.

And, you know, the State wants to get up here and just like - - and the State or the Defense wants to say this or that. They don't want you to know about her behavioral issues. They don't want you to know that she's made a false bomb report before and they don't want you to know that she's on probation. And they really don't want you to know that this is a 12-year-old girl that's sexually active. And that [trial counsel] Mr. Schwartzreich's [sic] a bad person for bringing up that this is a sexually active 12-year-old girl. But it's relevant in this case. And -- And -- And it has to be brought up in this case.

(Trial Transcript at 490-91)(DE# 12-1; Ex. 2).

reasonable conclusions that could be drawn from the evidence, and the evidence need not be "inconsistent with every reasonable hypothesis other than guilt").

Since Smith has not shown that the prospective witness could have offered any testimony to overcome the strong evidence of guilt presented by the state, trial counsel's performance was not constitutionally ineffective failing to call Boynton as a defense witness at trial. <u>See generally</u> <u>Gadson v. Secretary Dept. of Corrections</u>, 2009 WL 1543814, *8-9 (M.D.Fla. 2009)(finding trial counsel not constitutionally required to depose the witnesses in order to be reasonably effective under *Strickland*).

In conclusion, it is clear from the record when viewed as a whole that the petitioner received vigorous representation more than adequate under the Sixth Amendment standard at every stage of the criminal proceedings. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Defense counsel made a reasonable investigation of the facts, was well-prepared for trial, conducted full and extensive cross-examination of the state's witnesses, made appropriate objections, and moved for judgment of acquittal. Trial counsel also presented a forceful and compelling closing argument in which counsel detailed for the jury many possible deficiencies in the state's case against Smith, attempting to persuade the jury that the state had failed to prove its case beyond a reasonable doubt. <u>See e.g.</u>, Trial Transcript at 501-21. As was the prerogative of the fact-finder, it rejected the defense presented, and instead believed the strong evidence admitted by the state. This Court must defer to the trial court's judgment as to the weight and credibility of the evidence. <u>See</u> <u>Wilcox v. Ford</u>, 813 F.2d 1140, 1143 (11th Cir. 1987), *citing*, <u>Jackson v. Virginia</u>, 443 U.S. 307, 326 (1979).

Accordingly, the postconviction trial court's determination that Smith was not entitled to collateral relief on his ineffective assistance of trial counsel claim presented here, which ruling was affirmed on appeal, was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). Williams v. Taylor, 529 U.S. 362 (2000).

## VII. Evidentiary Hearing

Petitioner has requested an evidentiary hearing. Based upon the foregoing, Petitioner's request for an evidentiary hearing on the merits of any or all of his claims should be denied since the habeas petition can be resolved by reference to the state court record. 28 U.S.C. §2254(e)(2); Schriro v. Landrigan, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007)(holding that if record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing). See also Atwater v. Crosby, 451 F.3d 799, 812 (11th Cir. 2006)(addressing the petitioner's claim that his requests for an evidentiary hearing on the issue of trial counsel's effectiveness during the penalty phase of his trial in both the state and federal courts were improperly denied, the court held that an evidentiary hearing should be denied "if such a hearing would not assist in the resolution of his claim."). Petitioner has failed to satisfy the statutory requirements in that he has not demonstrated the existence of any factual disputes that warrant a federal evidentiary hearing.

## VIII. Certificate of Appealability

As amended effective December 1, 2009, §2254 Rule 11(a)

23

provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rules Governing §2254 Proceedings, Rule 11(b), 28 U.S.C. foll. §2254.

After review of the record, Petitioner is not entitled to a certificate of appealability. "A certificate of appealablilty may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To merit a certificate of appealability, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. Slack v. McDaniel, 529 U.S. 473, 478, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). See Eagle v. Linahan, 279 F.3d 926, 935 (11th Cir. 2001). Because the petition is clearly meritless, Petitioner cannot satisfy the *Slack* test. Slack, 529 U.S. at 484.

As now provided by Rules Governing §2254 Proceedings, Rule 11(a), 28 U.S.C. foll. §2254: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

IX. Recommendations

Based upon the foregoing, it is recommended that this petition for habeas corpus relief be denied. It is further recommended that

no certificate of appealability issue.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 23rd day of March, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Leroy Smith a/k/a Troy Swint, Pro Se
     DC# 669722
     South Bay Correctional Facility
     P.O. Box 7171
     South Bay, FL 33493

     Mitchell A. Egber, AAG
     Attorney General Office
     1515 N Flagler Drive
     9th Floor
     West Palm Beach, FL 33401-3432

25